## UNITED STATES DISTRICT COURT
## EASTERN MICHIGAN DISTRICT

**JEFFREY SCOTT,**

     **Plaintiffs,**

**v.**                                                                    **Case No.:**

**CITY OF DETROIT, a municipal corporation; and,**

**JOHN DOE OFFICER I, and JOHN DOES 2-25,**

     **Defendants.**

---

**Attorney for Plaintiffs:**

**DAVIS LAW GROUP**
**Maurice Davis, Esquire**
**Michigan Bar No. P76203**
**27600 Northwestern Hwy, Suite 215**
**Southfield, MI 48034**
**(248) 469-8501 Phone**
**maurice@michigancriminallawyer.com**

---

## <u>COMPLAINT</u>

*There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in this Complaint.*

COMES NOW, Plaintiff JEFFREY SCOTT, by and through their undersigned attorney, and sues Defendants CITY OF DETROIT, JOHN DOE I, and JOHN DOES 2-25; and in support of such states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      At all times material hereto, Plaintiff JEFFREY SCOTT was and is a resident of Wayne County, Michigan.

2.      Defendant City of Detroit is a municipal corporation duly organized and existing under the Constitution and laws of the State of Michigan in Wayne County, Michigan. It is, and has been at all times relevant hereto, authorized by law to maintain and operate the Detroit Police Department.  By and through its agents, including but not limited to the Mayor, the Chief of Police, its supervisors, operating officers, Boards, Commissions, and Committees and its final policymakers, Defendant City, at all times relevant hereto, acting through its official policy makers, established, promulgated and implemented the policies, customs and practices, written and unwritten, of the Detroit Police Department, with regard to hiring, training, supervision, discipline of the employees of said department.

3.      At all times material hereto, Defendant, JOHN DOE I, was an officer employed by Defendant CITY OF DETROIT, by and through the Detroit Police Department, and was acting in his individual capacity and in his official capacity acting under color of law.  Defendant JOHN DOE I was the officer driving the automobile which struck and hit Plaintiff JEFFREY SCOTT causing grievous injury.

4.      At all times material hereto, Defendants, JOHN DOES 2-25, employees of Defendant CITY OF DETROIT and/or Detroit Police Department and were acting in their individual capacities and in their official capacities acting under color of law.  Plaintiff is currently

unaware of the true names and capacities of Defendants sued as JOHN DOES 2-25 and hereby sues Defendants under fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities, if and when they are obtained. JOHN DOES 2-25 actually and proximately caused Plaintiff's injuries and damages.

5. This Court has subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights jurisdiction).

6. The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

7. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) as a significant amount of the acts and omissions giving rise to this complaint occurred in Wayne County.

9. With this Complaint, Plaintiff seeks relief for violations, under color of state law, of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. §1983, and tort claims of Negligence, Assault, Battery, and Intentional Infliction of Emotional Distress.

## **FACTUAL ALLEGATIONS**

10. On April 4, 2021, Detroit Police Department officers responded to a domestic violence disturbance. Defendant City of Detroit Police Department officers alleged in a police report that a male was present at the domestic violence disturbance that walked away.

11. A short time thereafter a Detroit Police Department officer, Defendant John Doe I, intentionally struck Plaintiff, Jeffrey Scott, an African American male, with his automobile as

a means of apprehending him as a potential witness and/or suspect in the domestic violence disturbance.

12.    Plaintiff Jeffrey Scott was unarmed and did not have any weapon.

13.    Plaintiff Jeffrey Scott was never charged with any crime related to the subject incident.

14.    Defendant John Doe I actually and proximately caused severe catastrophic injury that resulted in our client having a knee surgery, a second knee surgery, he suffered a dislocated shoulder, severe bruising and gashes on his body, he suffers permanent scarring, and ongoing and permanent severe emotional injuries and damages.

15.    Defendant John Doe I used his vehicle to intentionally hit Plaintiff Jeffrey Scott as a means of apprehending him because he is a member of the African American race. Moreover, Plaintiff Jeff Scott's girlfriend arrived upon the scene and witnessed the Detroit Police Department officers standing around Mr. Scott's body and laughing and joking, showing a callous disregard for his life and failing to render any aide.

16.    Upon information and belief, Defendant John Doe I was not subject to any discipline or termination for such a gross violation of the law and a citizen's constitutional rights. Defendant City of Detroit's failure to discipline him ratified said misconduct.

17.    Defendant John Doe I and the Detroit Police Department officers do not use their vehicles to hit the bodies of White citizens as a means of apprehending them.

18.    Between 2003-2014, the Defendant City of Detroit's police department was subject to a Consent Decree with the United States Department of Justice for its use of excessive force and wrongful arrests without probable cause, and this Court was charged with monitoring Defendant.

19.     Defendant City of Detroit has a long pattern and practice and/or custom and policy of racial discrimination in violation of its citizens Fourteenth Amendment rights; and, has a long pattern and practice and/or custom and policy of use of excessive force against its citizens in violation of their Fourth Amendment Rights, including but not limited to the following:

   a. In August 2020, Detroit Police Department officers violently beat Kevin Kwart, an innocent person aiding protestors and used excessive force on his person resulting in serious medical injuries.  The incident was captured on camera.  Moreover, Detroit Police Department officers falsified traffic violations against him and then refused to sign the citations because it was glaringly obvious, the citations were falsified.  Kevin Kwart filed a lawsuit against Defendant City of Detroit and reached a settlement with Defendant.
   b. In August 2020, during the same incident involving Kevin Kwart, an African American male was being unjustifiably beaten after he was restrained by Detroit Police Department in a display of excessive force.
   c. In 2021, Detroit Police Department officers shot 19 year old Michael Adams in the back twice as he was unarmed and fleeing a scene.
   d. In 2021 CAIR filed a lawsuit against Detroit Police Department for engaging in racial discrimination and violations of citizens Fourth Amendment rights.
   e. In 2021 Detroit Police Department conducted a high-speed police chase and used excessive force causing a car accident leading to the death of Bruceton Smith, an African American male.  During the incident Detroit Police Department failed to render any aide or call 911 to treat him for his injuries as he was dying because of his race in violation of his Fourteenth Amendment rights.

20.     In addition, Detroit Police Department officers have been involved in the following misconduct:

   a. In 2021, Lieutenant John F. Kennedy and Daniel S. Vickers two Detroit police officers were indicted on Federal charges for bribery and conspiracy to commit bribery—one of whom was a lieutenant who had been in command of the Detroit Police Department's Integrity Unit.  According to the indictment, Kennedy conspired with Vickers to commit bribery by accepting money and other items of value in exchange for Kennedy using and promising to use his influence as a supervisor to persuade other officers to make tow referrals to a towing company in violation of the city's ordinance and Detroit Police Department policy.  Kennedy committed these crimes while serving as the supervisor in command of the police department's Integrity Unit, which was responsible for investigating reports of law violations and professional misconduct by police officers and other city employees.

    b.  In 2021 Officer Zeolla was promoted to sergeant despite the fact that no officer on the force today had received more complaints from citizens than him on the date he was promoted: 93 and counting.  Clearly, Defendant City of Detroit ratifies and promotes misconduct.

    c.  In 2021 Marcellus Ball, a former Detroit Police Department detective filed a Whistleblower's lawsuit against the City of Detroit, after he reported that the department had an unlawful verbal policy wherein supervisors required the arrest of every person in any car with an unlawful firearm, whether or not there was probable cause to make said arrest in violation of the Fourth Amendment.  Officer Ball alleged that the Chief of Police refused to meet with him to discuss the issue, and that he faced retaliation and intimidation after he made citizens' constitutional violations public.   Officer Ball stated to the press: "You're a supervisor and you make the statement that everybody in the car if a gun is found, everybody is going to jail, I don't care what the circumstances are," Ball said he was told. https://www.wxyz.com/news/community-connection/former-detroit-police-detective-files-whistleblower-lawsuit-after-alarming-uptick-in-ccw-cases The former detective says that action can ruin a life.  *Id.*  You have guns found in the trunk, six people in the car, all six people get arrested for that gun when you cannot prove they had it," Ball said. *Id.*  "What happens to the lives of those six individuals who were in that car and they're linked to that weapon, those lives are affected forever," Ball continued. *Id.*  He says 99.9% of the people affected by this were African American and Latino. *Id.*  Essentially that practice is in violation of the Fourth Amendment and also in violation of the Fourteenth Amendment that prohibits racial discrimination.

21.    In the instant matter, Defendant City of Detroit has gone to great lengths to cover up what happened to Plaintiff Jeffrey Scott, has failed to conduct a fair and thorough investigation, has falsified documents including the police report which does not even mention the fact that a Detroit Police Department officer, John Doe I, struck him with his vehicle. Defendant City did not generate a use of force report, did not produce a video or body worn camera footage in response to public records requests, and did not provide the name of the officer that hit Plaintiff Jeffrey Scott with his vehicle.

22.    Defendant City has clearly failed to train and/or supervise its officers on citizens' right to be free of excessive force and unlawful search and seizure pursuant to the Fourth Amendment, and the right to be free of racial discrimination pursuant to the Fourteenth

Amendment, on how to conduct fair and impartial investigations.  The Detroit Police Department and Defendant City of Detroit failed to implement proper policies and procedures, implement trainings, and properly supervise its officers with regard to: proper vehicle maneuvers in apprehending persons, lawful uses of force, proper search and seizure, to prevent racial discrimination, among other failures to be identified in discovery.

23.     Defendant City of Detroit failed to conduct proper background checks prior to employing Defendants John Doe I and John Does 2-25, and if they had conducted proper background checks would have uncovered that they were not fit for employment as a law enforcement officer.

24.     Moreover, after becoming aware of Defendant John Doe I and John Does 2-25 unfitness for employment they failed to terminate said employees endangering citizens including Plaintiff Jeffrey Scott.

25.     WHEREFORE, Plaintiff sustained economic damages, compensatory damages, physical injuries, emotional pain and suffering, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable, based upon the following causes of action:

<u>COUNT I</u>
<u>VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT
TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. §1983
AGAINST ALL DEFENDANTS</u>

26.     Plaintiff incorporates paragraphs 1 through 25 as if fully stated herein.

27.     This is an action brought by Plaintiff against Defendants City of Detroit, John Doe I, and John Does 2-25, for deprivation of his constitutional rights under the Fourth Amendment,

including unlawful search and seizure and for excessive force and pursuant to 42 U.S.C. Sections 1983 and 1988, respectively.

28.     At all times material herein, Defendants were operating under color of law and behaved in an unreasonable manner without regard to Plaintiff's constitutional rights pursuant to the Fourth Amendment.

29.     A municipality is liable under 42 U.S.C. § 1983 if the alleged violations are attributable to its own policies, practices, procedures and/or customs.

30.     Defendants' above-described conduct violated Plaintiff's clearly established rights pursuant to the Fourth Amendment of the United States Constitution to be free from unreasonable, excessive, and arbitrary force.

31.     The arbitrary and indiscriminate use of force against Plaintiff, described in detail above, was excessive and objectively unreasonable, in direct violation of Plaintiff's rights under the Fourth Amendment; to wit; Defendant John Doe I hit him with a vehicle as a means of apprehension.

32.     Defendants neither accused Plaintiff of a crime nor did they attempt to arrest him before hitting him with a vehicle, nor did they issue any verbal warning prior to hitting him with the vehicle.

33.     Plaintiff did not pose any reasonable immediate threat to the safety of any officer nor have Defendants provided sufficient evidence asserting so.

34.     Defendants' actions toward Plaintiff served no purpose but to injure and punish Plaintiff.

35.     Defendants had a known pattern and practice of using excessive force and failing to implement any policies or procedures to properly ensure that citizens were not subjected to excessive force as aforementioned.

36.     At all times relevant to this Complaint, Defendant City of Detroit acted with deliberate indifference to Plaintiff's Constitutional rights by maintaining policies, practices, and customs that condoned and fostered the Defendant Officers' misconduct. Specifically, the City of Detroit maintained a policy that permitted the Defendant Officers to use unreasonable and excessive force on unarmed, nonthreatening individuals.

37.     Defendants ratified the customs and practices in existence tolerating the regular use of excessive force that constituted the moving force behind the constitutional violations of Plaintiff Jeff Scott.

38.     To wit, Defendant failed to implement proper policies and procedures and/or properly train, supervise, and discipline its employees and officers with regard to the following:

a)  Proper use of force/excessive use of force;

b)  Proper use of vehicular maneuvers and/or use of vehicle as a weapon;

c)  Verbal commands and de-escalation techniques;

d)  Failed to properly and adequately investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by Defendant City of Detroit; and

e)  Failed to discipline officers that engaged in excessive force.

f)  Failed to terminate officers with known histories of engaging in use of excessive force; and in some instances even promoted said officers.

39.     Defendant City of Detroit, with clear deliberate indifference to Plaintiff, has a demonstrable pattern and unwritten policy in place to ignore and thereby encourage unlawful and unconstitutional actions of its officers, including:

      a.   Threatening to seize peoples' cameras and/or phones 'as evidence' when those people are lawfully engaged in recording police activity;

      b.   Failing to properly wear and/or turning off body cameras when they are engaged in or unlawful and unconstitutional activity;

      c.   Failing to complete use of force reports or otherwise individually identify officers who asserted force against an individual;

      d.   Intentionally covering all identifiable information including, but not limited to, name, badge, tattoos, and face; and

      e.   Obstructively refusing to identify officers accused of serious constitutional violations.

      f.   Upon information and belief, the individual Defendant Officers were not subjected to any disciplinary action despite their unlawful actions.

40.     Defendant City of Detroit implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of its agents and employees because to date, there have been numerous cases of excessive force within the Detroit Police Department.

41.     Defendant City of Detroit has acted with deliberate indifference to the constitutional rights of the Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants, the Plaintiff's constitutional rights were violated, and he suffered permanent and severe physical and psychological injuries and damages

42.     Pursuant to 42 U.S.C. Section 1988 Defendant City of Detroit is liable to pay reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiff sustained economic damages, compensatory damages, physical injuries, emotional pain and suffering, and Plaintiff will seek punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## COUNT II
## VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. §1983 AGAINST ALL DEFENDANTS

43.     Plaintiff incorporates paragraphs 1 through 25 as if fully stated herein.

44.     This is an action brought by Plaintiff Jeff Scott, an African American male, against Defendants City of Detroit, John Doe I, and John Does 2-25, for deprivation of his constitutional rights under the Fourteenth Amendment for unequal treatment based on his race, and pursuant to 42 U.S.C. Sections 1983 and 1988, respectively.

45.     At all times material herein, Defendants were operating under color of law and behaved in an unreasonable manner without regard to Plaintiff's constitutional rights pursuant to the Fourteenth Amendment.

46.     A municipality is liable under 42 U.S.C. § 1983 if the alleged violations are attributable to its own policies, practices, procedures and/or customs.

47.     Defendants' above-described conduct violated Plaintiff's clearly established rights pursuant to the Fourteenth Amendment of the United States Constitution to be free from racial discrimination.

48.     The arbitrary and indiscriminate use of force against Plaintiff, described in detail above, was excessive and objectively unreasonable; namely he was hit with a vehicle as a means of apprehension because he was a member of the African American race, and officers stood around him laughing instead of rendering aide because they viewed him as subhuman due to his race; in direct violation of Plaintiff's rights under the Fourteenth Amendment.

49.     Defendants had a known pattern and practice of engaging in racial discrimination and failing to implement any policies or procedures to properly ensure that citizens were not subjected to racial discrimination, as aforementioned.

50.     At all times relevant to this Complaint, Defendant City of Detroit acted with deliberate indifference to Plaintiff's Constitutional rights by maintaining policies, practices, and customs that condoned and fostered the Defendant Officers' misconduct. Specifically, the City of Detroit maintained a policy that permitted the Defendant Officers to engage in racial discrimination.

51.     Defendants ratified the customs and practices in existence tolerating the regular use of racial discrimination that constituted the moving force behind the constitutional violations of Plaintiff Jeffrey Scott.

52.     To wit, Defendant failed to implement proper policies and procedures and/or properly train, supervise, and discipline its employees and officers with regard to the following:

   a.   The officers' obligation not to engage in racial discrimination;

   b.   Failed to properly and adequately investigate citizen complaints of police misconduct and allegations of racial discrimination; and, instead acts of misconduct were tolerated by Defendant City of Detroit;

   c.   Failed to discipline officers that engaged in racial discrimination; and,

      d.   Failed to terminate officers with known histories of engaging in racial discrimination; and in some instances, even promoted said officers.

53.    Defendant City of Detroit, with clear deliberate indifference to Plaintiff, has a demonstrable pattern and unwritten policy in place to ignore and thereby encourage unlawful and unconstitutional actions of its officers, including:

      a.   Threatening to seize citizens' cameras and/or phones 'as evidence' when those people are lawfully engaged in recording police activity;

      b.   Failing to properly wear and/or turning off body cameras when they are engaged in or unlawful and unconstitutional activity;

      c.   Intentionally covering all identifiable information including, but not limited to, name, badge, tattoos, and face;

      d.   Obstructively refusing to identify officers accused of serious constitutional violations; and,

      e.   Upon information and belief, the individual Defendant Officers were not subjected to any disciplinary action despite their unlawful actions.

54.    Defendant City of Detroit implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of its agents and employees because to date, there have been numerous cases of racial discrimination alleged against the Detroit Police Department.

55.    Defendant City of Detroit has acted with deliberate indifference to the constitutional rights of the Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants, the Plaintiff's constitutional rights were violated, and he suffered permanent and severe physical and psychological injuries and damages.

56.     Pursuant to 42 U.S.C. Section 1988 Defendant City of Detroit is liable to pay reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiff sustained economic damages, compensatory damages, physical injuries, emotional pain and suffering, and Plaintiff will seek punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## COUNT III

## NEGLIGENCE AGAINST DEFENDANT CITY OF DETROIT

57.     Plaintiff incorporates paragraphs 1 through 25 as if fully stated herein.

58.     This is an action brought by Plaintiff Jeffrey Scott against Defendant City of Detroit, for negligence, and negligent training, supervision and retention of employees.

59.     Defendant City of Detroit is vicariously liable for the actions of its officers committed in the course and scope of their employment.

60.     Defendant City of Detroit has a non-delegable duty to use reasonable care to prevent the use of unlawful force and racial profiling of its citizens, and to create, develop, and implement policies and procedures to ensure that citizens constitutional rights are not violated. Defendant City of Detroit breached such duty when it failed to create, develop, and implement policies and procedures to ensure citizens' Fourth Amendment and Fourteenth Amendment constitutional rights are not being violated.

61.     Defendant City of Detroit also breached its duty when it failed to properly hire, supervise, train and retain their employees on such procedures that would prevent constitutional violations including:

14

a.   Proper use of force/excessive use of force;

b.   Proper use of vehicular maneuvers and/or use of vehicle as a weapon;

c.   Verbal commands and de-escalation techniques

d.   Failed to properly and adequately investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by Defendant City of Detroit; and

e.   Failed to discipline officers that engaged in excessive force;

f.   Failed to train officers obligation not to engage in racial discrimination;

g.   Failed to properly and adequately investigate citizen complaints of police misconduct and allegations of racial discrimination and instead, acts of misconduct were tolerated by Defendant City of Detroit; and,

h.   Failed to discipline officers that engaged in racial discrimination.

i.   Failed to terminate officers with known histories of engaging in racial discrimination and use of excessive force; and in some instances even promoted said officers.

62.   Defendant City of Detroit also breached the duties owed to Plaintiff, as it has a demonstrable pattern and unwritten policy in place to ignore and thereby encourage unlawful and unconstitutional actions of its officers, including failing to retrain, supervise, discipline and/or terminate officers accused of the following:

a.   Threatening to seize peoples' cameras and/or phones 'as evidence' when those people are lawfully engaged in recording police activity;

b.   Failing to properly wear and/or turning off body cameras when they are engaged in or unlawful and unconstitutional activity;

15

c.  Intentionally covering all identifiable information including, but not limited to, name, badge, tattoos, and face;

d.  Obstructively refusing to identify officers accused of serious constitutional violations; and,

e.  Upon information and belief, the individual Defendant Officers were not subjected to any disciplinary action despite their unlawful actions.

63.  Defendant City of Detroit had knowledge and were on notice of all prior allegations of race discrimination and excessive force made against Defendant's officers and knew of a need to train and/or retrain officers, more closely supervise and monitor officers, and to terminate the employment of the officers engaging in said misconduct but failed to do so and/or take corrective actions to protect citizens like Plaintiff Jeffrey Scott.

64.  Defendant City of Detroit's enumerated failures, actions, and omissions actually and proximately caused the breach of the duties owed to Plaintiff and caused him to suffer severe ongoing and permanent physical and psychological injuries and damages.

WHEREFORE, Plaintiff Jeffrey Scott will seek economic, compensatory, psychological, conscious pain and suffering, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable, and files this instant action to demand an award for injuries and damages against Defendant.

**COUNT IV**
**GROSS NEGLIGENCE AGAINST DEFENDANT JOHN DOE I**

65.  Plaintiff incorporates paragraphs 1 through 25 as if fully stated herein.

66.  This is an action brought by Plaintiff Jeffrey Scott for gross negligence against Defendant JOHN DOE I in his individual capacity pursuant to Michigan Statute.

16

67.     To support a claim of gross negligence under Michigan law, Plaintiff must show that the Defendants,' "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

68.     At all material times hereto, Defendant JOHN DOE I had a duty to use reasonable force when interacting with Plaintiff Jeffrey Scott, and to maneuver his vehicle in a way so as not to place Plaintiff Jeffrey Scott in danger of great bodily harm or losing his life.

69.     Defendant JOHN DOE I breached the aforementioned duty by intentionally driving his motor vehicle into Plaintiff Jeffrey Scott causing him severe bodily harm and psychological injury.

70.     Defendant JOHN DOE I's action of driving his vehicle into Plaintiff Jeffrey Scott clearly constitutes reckless conduct that demonstrates substantial lack of concern as to whether an injury occurs.

71.     As a direct and proximate cause of the Defendant JOHN DOE I's gross negligence Plaintiff Jeffrey Scott suffered severe permanent and ongoing physical and psychological injuries and damages.

WHEREFORE, Plaintiff sustained economic damages, compensatory damages, physical injuries, emotional pain and suffering, and Plaintiff will seek punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

<u>**COUNT V**</u>
<u>**BATTERY- DEFENDANT JOHN DOE I**</u>

72.     Plaintiff incorporates paragraphs 1 through 25 as if fully stated herein.

73. This is an action brought by Plaintiff Jeffrey Scott for battery against Defendant JOHN DOE I in his individual capacity pursuant to Michigan Statute.

74. The aforementioned actions and conduct of Defendant JOHN DOE I; namely driving his vehicle into Plaintiff, were willful, wanton, intention and/or reckless.

75. The aforementioned actions of JOHN DOE I created a reasonable apprehension of an immediate threat of harm and/or offensive touching to Plaintiff.

76. The aforementioned actions and conduct by Defendant JOHN DOE I as incorporated herein, did in fact constitute an offensive and harmful touching of Plaintiff.

77. Defendant JOHN DOE I knew or should have known that his aforementioned actions and/or conduct would cause injury to Plaintiff.

78. As a proximate result of Defendant JOHN DOE I's actions, Plaintiff suffered severe, ongoing, and permanent physical and psychological injuries and damages.

WHEREFORE, Plaintiff sustained economic damages, compensatory damages, physical injuries, emotional pain and suffering, and Plaintiff will seek punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## <u>COUNT VI</u>
## <u>ASSAULT- DEFENDANT JOHN DOE I</u>

79. Plaintiff incorporates paragraphs 1 through 25 as if fully stated herein.

80. This is an action brought by Plaintiff Jeffrey Scott for assault against Defendant JOHN DOE I in his individual capacity pursuant to Michigan Statute.

81. The aforementioned actions and conduct of Defendant JOHN DOE I; namely driving his vehicle into Plaintiff, were willful, wanton, intention and/or reckless.

82.     The aforementioned actions of JOHN DOE I created a reasonable apprehension of an immediate threat of harm and/or offensive touching to Plaintiff.

83.     The aforementioned actions and conduct by Defendant JOHN DOE I as incorporated herein, did in fact cause a reasonable apprehension of an immediate threat of harm to Plaintiff Jeffrey Scott as he remembers seeing the police vehicle moments before it struck him which caused him to fear for his life.

84.     Defendant JOHN DOE I knew or should have known that his aforementioned actions and/or conduct would cause Plaintiff to suffer apprehension of an immediate threat of harm to himself.

85.     As a proximate result of Defendant JOHN DOE I's actions, Plaintiff suffered severe, ongoing, and permanent physical and psychological injuries and damages.

WHEREFORE, Plaintiff sustained economic damages, compensatory damages, physical injuries, emotional pain and suffering, and Plaintiff will seek punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS JOHN DOE I, and JOHN DOES 2-25

86.     Plaintiff incorporates paragraphs 1 through 25 as if fully stated herein.

87.     Defendant JOHN DOE I and JOHN DOES 2-25 are liable for the intentional infliction of emotional distress upon Plaintiff Jeffrey Scott against Defendant JOHN DOE I for causing him to fear immediately great bodily harm and for striking him with a vehicle, and against

Defendant JOHN DOE I and JOHN DOES 2-25 for standing over his body at the scene and laughing without rendering aide.

88.     To support a claim for intentional infliction of emotional distress under Michigan Law, plaintiff has to demonstrate that the Defendants' conduct was (1) extreme and outrageous and (2) intentional or reckless, and he must establish (3) a causal connection between the conduct and (4) Plaintiff's severe emotional distress. *Walsh v. Taylor*, 263 Mich. App. 618, 689 N.W.2d 506, 517 (2004). All circumstances existed in this instance and the Defendants will be liable for the intentional infliction of emotional distress upon Plaintiff Jeffrey Scott.

89.     Defendants knew or should have known that driving a vehicle at his body, striking his body with a vehicle, and standing over him and laughing instead of rendering aide when he suffered severe bodily injury would cause a reasonable person severe emotional distress. Defendant JOHN DOE I and JOHN DOES 2-25 deliberately and recklessly inflicted mental suffering upon Plaintiff Jeffrey Scott.

90.     Plaintiff Jeffrey Scott has suffered severe emotional distress including flashbacks, anxiety, depression, and pain and suffering as a result of feeling physical pain combined with the mental and emotional anguish of recalling being hit by a vehicle.  Defendants are therefore liable for the intentional infliction of emotional distress suffered by Plaintiff.

WHEREFORE, Plaintiff sustained economic damages, compensatory damages, physical injuries, emotional pain and suffering, and Plaintiff will seek punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff sues Defendants, for damages as set forth herein in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs and will seek economic damages, compensatory damages, damages for physical injuries, emotional pain and suffering, and Plaintiff will seek punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: February 16, 2022.

Respectfully submitted,

_ _/s/ Maurice Davis_ _____
Maurice Davis, Esquire
DAVIS LAW GROUP
Michigan Bar No. P76203
27600 Northwestern Hwy, Suite 215
Southfield, MI 48034
TEL: (248) 469-8501
maurice@michigancriminallawyer.com

21